IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRENCE A. HARVEY, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00401 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| T.D. LARGE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Terrence A. Harvey, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants subjected him to excessive force, failed to intervene when another officer was using excessive force, subjected him to cruel and unusual living conditions, denied him adequate medical treatment, and destroyed his personal property. Defendants filed motions for summary judgment and Harvey responded, making this matter ripe for disposition. After reviewing the record, I conclude that Harvey's personal property claim fails to state a federal claim and that all of Harvey's remaining claims except those relating to his placement and confinement in five-point restraints are unexhausted. Accordingly, I will dismiss the property claim and grant defendants' motions for summary judgment as to all claims except those involving the five-point restraints, as to which I will deny summary judgment.

I.

Harvey alleges that on March 18, 2015, Sergeant Large used excessive force against him multiple times and Lieutenant Sykes stood by and did not intervene. Harvey states that he suffered multiple physical injuries as a result of the excessive force and that Captain Still "ignored" Harvey's injuries and instructed Sgt. Large to put Harvey into ambulatory restraints. Nurse Mullins came to inspect the ambulatory restraints, but she "ignored" and "refused to treat"

Harvey's injuries. Harvey alleges that while he was being transported in the ambulatory restraints, Officers Gibson, Addington, and Woliver used excessive force against him, causing him to suffer additional physical injuries.

Thereafter, Harvey was placed in five-point restraints by Lieutenant Franklin, Sargent Collins, Addington, and Woliver, despite not "displaying any intractable behavior" or receiving any medical treatment for his injuries, which included "open" stab wounds on his abdomen, bloody knees, and a lip laceration. Nurse Kelly came to assess the five-point restraints and any injuries, but provided Harvey no medical treatment, despite seeing that he was bleeding. Harvey alleges that Nurse Kelly told him to put soap and water on his actively bleeding knees even though she knew that it would be impossible for him to do while he was in five-point restraints. Harvey alleges that he remained in five-point restraints for a total of 22 hours while suffering in pain and bleeding.

Approximately 6 hours into his time in the restraints, Harvey was let up for a bathroom and dinner break by Sgt. Collins. However, Sgt. Collins gave Harvey an empty dinner bag and when Harvey told him, Sgt. Collins threw the empty bag out of the cell. Harvey was not provided dinner. Thereafter, without displaying "any intractable behavior to warrant their action," Harvey was placed back into five-point restraints by Sgt. Collins, Lt. Franklin, Gibson, and Addington. Nurse Kelly returned to assess the restraints again, but she ignored Harvey's complaints that he was in pain and bleeding and she provided him no medical treatment.

Harvey remained in five-point restraints for approximately 6 more hours until Sgt. Miller let him up for a second bathroom break. Even though Harvey did not display "any intractable behavior," Sgt. Miller "sadistically" strapped him back down in the five-point restraints. Nurse Wood came to assess the restraints. Harvey states that she noticed the "extreme swelling and

2

blood on [his] badly abraded knees and legs" and told Harvey that on his next break, she would clean and dress the wounds. Harvey was released from the restraints approximately 9 hours later, without any additional breaks.

Harvey alleges that "at no time" did he "give these prison officials justification" for placing or keeping him in the five-point restraints. He states that he "never became disruptive" and "never displayed any intractable behavior." Harvey alleges that during the nearly 22 hours that he spent in five-point restraints, he was left wearing only a pair of boxers, not given a blanket, not given any food, and only given two bathroom breaks. Upon his release from the restraints, Harvey alleges that he was unable to stand or walk on his own.

Harvey also alleges that when he was transferred to a segregation cell on March 18, 2015, Officers Dockery and McCowan inventoried and packed his personal property for the transfer. When Harvey received his property on April 1, 2015, he noticed that many items were missing, including: court transcripts; "evidence photos"; legal, religious, and educational books; his glasses, hat, and headphones; and photographs and the obituary of his mother. Harvey notified staff that his property was missing. Harvey alleges that Dockery and McCowan "deliberately destroyed or discarded" his personal property.

In their motions for summary judgment, defendants argue that Harvey failed to exhaust administrative remedies prior to filing this action. In response to the motions, Harvey alleges that he filed an informal complaint on April 2, 2015, concerning his placement and continued confinement in the five-point restraints. Harvey alleges that he did not receive a receipt for filing the informal complaint. He does, however, provide a "certificate of service" that indicates that he submitted the informal complaint. The "certificate of service" summarizes the allegations of the informal complaint as follows: On March 18, 2015, at ap[p]rox[imately] 10:00 am I was

3

strapped down in B3 Cell #05 in/on 5 point restraints and wasn't let up to be released until the next following day ap[p]rox[imately] 24 hours later."[1] Harvey alleges that when he did not receive a response to his informal complaint, he filed a regular grievance concerning the same issue on April 14, 2015. Harvey also did not receive a receipt for the grievance, but provides a "certificate of service" that indicates that he submitted it as he alleges. When he received no response to the grievance, Harvey alleges that he filed an appeal on May 20, 2015. He also did not receive a receipt for the appeal, but again provides a "certificate of service" that indicates he appealed as he alleges.

Harvey also alleges that he filed an informal complaint on April 22, 2015 regarding his missing personal property. After receiving no response, he filed a regular grievance concerning the property on May 4, 2015. The grievance was rejected at intake and was returned to him indicating that he needed to resubmit it with the inventory sheet and informal complaint. Harvey alleges that he resubmitted the grievance with the required documents on the next business day and it was rejected as untimely filed. Harvey alleges that he subsequently filed additional grievances and appeals concerning his property, to no avail.

Harvey does not allege that he filed an informal complaint, regular grievance, and appeal concerning his allegations of excessive force, bystander liability, denial of medical treatment, or placement in ambulatory restraints.

---

[1] The "certificate of service" names Lt. Franklin, Sgt. Collins, Capt. Still, Gibson, and Addington as the individuals involved in the allegations of his informal complaint. I note that Harvey's complaint does not allege facts against Capt. Still related to the five-point restraints, but Harvey does allege facts against Woliver and Sgt. Miller. Further, because Harvey's "certificate of service" does not mention any denial of medical treatment or name any medical personnel, and without further evidence, I conclude that Harvey's informal complaint did not address his claims concerning the denial of adequate medical treatment.

4

**II.**

Harvey alleges that defendants Dockery and McCowan intentionally destroyed his personal property. The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 545 (1981). Under the Virginia Tort Claims Act, Virginia has waived sovereign immunity for damages for "negligent or wrongful" acts of state employees acting within the scope of employment. Va. Code § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the Virginia Tort Claims Act and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. *See, e.g., Wadhams v. Procunier*, 772 F.2d 75, 77-78 (4th Cir. 1985). Because the availability of a tort action in state court fully satisfies the requirements of a meaningful post-deprivation process, I conclude that Harvey has failed to state a cognizable § 1983 claim. Therefore, I will dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**III.**

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

## IV.

VDOC Operating Procedure ("OP") § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, the inmate must demonstrate that he has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. A grievance meeting the criteria for acceptance is logged in on

6

the day it is received.² If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman.

V.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "'[T]he language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensible requirement, thus requiring an outright dismissal [of unexhausted claims] rather than issuing continuances so that exhaustion may occur.'" *Carpenter v. Hercules*, No. 3:10cv241, 2012 U.S. Dist. LEXIS 72096, at *12, 2012 WL 1895996, at *4 (E.D. Va. May 23, 2012) (emphasis in original) (quoting *Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003)). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Failure to exhaust all levels of administrative review is not

---

² Up to three levels of review for a regular grievance exist. The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. The Level II response informs the offender whether he may pursue an appeal to Level III.

proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, I am "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

It is undisputed that Harvey did not exhaust administrative remedies concerning his allegations of excessive force, bystander liability, denial of medical treatment, or placement in ambulatory restraints. And Harvey has not demonstrated that the grievance process was otherwise unavailable to him. Accordingly, I will grant defendants' motion for summary judgment as to these claims.

However, defendants have not demonstrated the absence of a material dispute of fact regarding Harvey's exhaustion of available administrative remedies concerning his federal and state law claims concerning his placement and continued confinement in the five-point restraints. Accordingly, I will deny defendants' motion for summary judgment as to these claims.

ENTER: This 31st day of January, 2017.

*[signature: Norman K. Moon]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE