# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| TERRENCE A. HARVEY, | ) | |
|     Plaintiff, | ) | Case No. 7:15CV00401 |
| | ) | |
| v. | ) | |
| | ) | |
| T. LARGE, *et al.*, | ) | By: Norman Moon |
|     Defendants. | ) | United States District Judge |
| | ) | |

## MEMORANDUM OPINION

Terrence A. Harvey, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants Lieutenant L. Collins, Lieutenant S. Franklin, Lieutenant E. Miller, and Correctional Officers Woliver, Gibson, and Addington[1] violated his Eighth and Fourteenth Amendment rights by placing him in five-point restraints for 22 hours while housed at the Red Onion State Prison. (Docket No. 61) Defendants filed a motion for summary judgment (Docket No. 89 ) and Harvey responded, making this matter ripe for disposition. Upon review of the record, I conclude that Defendants' motion for summary judgment must be granted in part and denied in part.[2]

---

[1] Previously, the court dismissed claims against all other named Defendants in this case, pursuant to the court's Memorandum Opinion and Order entered on January 31, 2017. (Dkts. 78, 79).

[2] To the extent Harvey brings this action against Defendants in their official capacity for monetary damages, his claim is not cognizable under § 1983, and therefore the court will grant Defendants' motion for summary judgment as to Harvey's claims for monetary damages against Defendants in their official capacity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

# I.

Harvey alleges that on March 18, 2015 at approximately 9:00 am, Sergeant Large used excessive force against him by assaulting him multiple times with no provocation or justification, causing Harvey to suffer physical injuries.[3] Sgt. Large called in other officers to assist him in placing Harvey, who was only wearing boxer briefs, in ambulatory restraints even though Harvey had a "lacerated bottom lip and [open] flesh wounds" from the assault. Am. Compl. ¶ 15, Docket No. 61. Harvey was then escorted, in ambulatory restraints, from A Building to B Building to be placed in segregation housing. During the transport, Harvey alleges that Officers Gibson, Addington, and Woliver "unjustifiably slammed" Harvey to the concrete side walk, causing injuries to both of his knees and subsequent bleeding. *Id*. ¶¶ 20-21. Harvey alleges that a spit mask was then placed on him "as justification for the [] officers['] assault" because it gave the "rationale" that Harvey attempted to spit on one of them. *Id*. ¶ 22. Shortly thereafter, Harvey was placed in five-point restraints[4] by Lt. Franklin, Sgt. Collins, and Officers Addington and Woliver, despite not "displaying any intractable behavior" or receiving any medical treatment for his injuries. Nurse Kelly came to assess the five-point restraints and any injuries, but provided Harvey no medical treatment, despite seeing that he was bleeding. Harvey alleges that Nurse Kelly never attempted to see his lacerated lip, as it was under the spit mask, and told Harvey to put soap and water on his actively bleeding knees even though she knew it would be impossible to do so while he was in five-point restraints. Harvey then remained in five-point restraints for a total of 22 hours while suffering in pain and bleeding.

---

[3] During the alleged assault, Harvey asserts that Sgt. Large pinned him down, beat and stabbed him with an ink pen, while Harvey yelled for help.

[4] Five-point restraints mean an inmate's chest and each arm and leg are strapped to a bed.

Approximately 6 hours into Harvey's time in five-point restraints, at 4:05 pm, Sgt. Collins entered the cell to let Harvey up for a bathroom and dinner break. However, Sgt. Collins gave Harvey an empty dinner bag and when Harvey told him it was empty, Sgt. Collins threw the empty bag out of the cell. Harvey was not provided dinner and was placed back in five-point restraints by Sgt. Collins, Lt. Franklin, Gibson, and Addington, despite not displaying "any intractable behavior to warrant [such] action." Am. Compl. ¶ 31, Docket No. 61. Nurse Kelly returned to assess the restraints again, but she ignored Harvey's complaints that he was in pain and bleeding and she did not provide medical treatment.

Harvey remained in five-point restraints for approximately 6 more hours until Sgt. Miller let him up for a second bathroom break at 10:25 pm. Even though Harvey did not display "any intractable behavior," Sgt. Miller "sadistically" strapped him back down in the five-point restraints. *Id.* ¶ 33. Nurse Wood came to assess the restraints, and Harvey states that she noticed the "extreme swelling and blood on [his] badly abraded knees and legs" and told Harvey that on his next break she would clean and dress the wounds. *Id.* ¶ 34. Harvey states that Sgt. Miller never let him up for the remaining 8 hours of Sgt. Miller's shift, and therefore Nurse Wood was not able to treat Harvey's injuries as she had planned.

Harvey was released from five-point restraints about an hour after Sgt. Miller's shift ended, at approximately 7:50 am on March 19, 2015. Harvey alleges that "at no time" did he "give these prison officials justification" for placing or keeping him in the five-point restraints. He states that he "never became disruptive" and "never displayed any intractable behavior." During the nearly 22 hours that Harvey spent in five-point restraints, he was left wearing only a pair of boxers, not given a blanket, not given any food, and only given two bathroom breaks.

Upon his release from the restraints, Harvey states that he was unable to stand or walk on his own.

In their motion for summary judgment, Defendants assert that on March 18, 2015, at approximately 9:05 am, Harvey became combative towards staff during his transport to the restrictive housing unit. Franklin Aff. ¶ 5. Staff attempted to talk to Harvey, but he cursed at them, and was then escorted to the A-4 segregation pod. *Id*. Defendants assert that Harvey continued to curse at correctional officers, attempting to spit on them, and stated "I'm not going to fucking seg!" *Id*. After it appeared that Harvey had calmed down, Defendants continued to escort Harvey but he then attempted to "head butt" staff. *Id*. Officers placed Harvey on the floor in a seated position until they could gain control of him again, when he began yelling into the A-6 pod, "Come kill the CO's they are trying to fuck me up!" *Id*. Defendants state that Harvey had previously told one of the escorting officers that he was a "blood gang member and that he would have other gang members hurt [the officer]." *Id*. After Harvey yelled out, inmates in the A-6 pod began to yell and call out to other inmates. *Id*.

Defendants state they continued to escort Harvey to a cell in the A-4 pod and attempted to place a spit mask on him, however, Harvey began a struggle with one of the officers and grabbed an ink pen from the officer's uniform pocket and attempted to stab the officer in the chest. *Id*. Once staff regained control of Harvey, they placed him in ambulatory restraints and kept him in the A-4 pod while they determined his new housing status. *Id*. at ¶ 6. Defendants Gibson, Woliver, Addington, Franklin, and Collins then escorted Harvey to B Building, during which Defendants allege that Harvey attempted to spit on officer Gibson. Franklin Aff. ¶ 7; Addington Aff. ¶ 4. In response, the officers placed Harvey on the ground and put a spit mask on him. Franklin Aff. ¶ 4. While putting the spit mask on Harvey, the officers state that none of

4

them "slammed Harvey into the ground." Addington Aff. ¶ 5. The officers then continued to escort Harvey to B Building, but because of Harvey's "erratic and disruptive behavior," Lt. Franklin recommended that the escorting officers place Harvey in five-point restraints. Franklin Aff. ¶ 7. Assistant Warden Artrip approved this, and Harvey was placed in five-point restraints without incident. *Id*.

After Harvey was placed in five-point restraints, at approximately 10:20 am, Nurse Kelly checked on him and noted that she "was able to pass two fingers under each wrist and ankle restraint" and that Harvey's "circulation was fine." Kelly Aff. ¶ 2. Nurse Kelly noted that the chest strap allowed Harvey to have proper chest expansion, his blood pressure and pulse were normal, and he did not have any bleeding or significant injury other than the "2 cm by 2 cm superficial skin abrasion to his right knee and laceration to his lower lip" noted earlier when Harvey was placed in ambulatory restraints. *Id*.; Mullins Aff. ¶ 2. Defendants state that Harvey was offered bathroom breaks, meals and was otherwise checked at 11:50 am, 4:05 pm, 7:54 pm, 8:35 pm, 10:15 pm, and 10:25 pm. Franklin Aff. ¶ 10, Encl. A. At the 4:05 pm check, Defendants assert that Harvey was offered a meal, as corroborated by prison surveillance video footage. Defendants assert that even though Lt. Collins does not recall Harvey individually, Lt. Collins "would not have refused an offender meals." Collins Aff. ¶ 4. At the 7:54 pm check, Defendants allege that Harvey began cursing and stated to staff to get him out of the restraints and that they were going to pay. Franklin Aff. ¶ 11, Encl. A. At the 8:35 pm check, Lt. Miller offered Harvey a bathroom break, but Harvey refused. Miller Aff. ¶ 4. At the 10:15 pm check, Lt. Miller again offered Harvey a bathroom break, which Harvey accepted, and afterwards Harvey was placed back in the restraints. *Id*. at ¶ 5.

5

As the night continued into March 19, 2015, Defendants state Harvey was checked at 2:54 am, 3:09 am, 3:35 am, and 7:50 am. Miller Aff. ¶ 5. At 2:54 am and 3:09 am, Harvey continued to yell and curse at staff. Franklin Aff. ¶ 11, Encl. A. Then, at the 3:28 am check, Harvey was offered a bathroom break, which he refused. Miller Aff. ¶ 6. Defendants state that because Harvey "continued to exhibit disruptive behavior" throughout the night and into the morning the next day, Harvey was not released from the five-point restraints until approximately 7:50 am on March 19, 2015. Franklin Aff. ¶ 11, Encl. A. As a result of his behavior, Harvey received six disciplinary charges. *Id*. at ¶ 12. On March 19, 2015, after Harvey was released from the five-point restraints, a nurse observed Harvey had a "superficial scrape to the surface of his left knee and a small abrasion on his right knee." Kelly Aff. ¶ 4. Defendants state that Harvey did not request medical attention at that time, and his medical records reflect that x-rays were taken of both knees on March 27, 2015, but that no injury appeared to have occurred. Mullins Aff. ¶ 5.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative[.]" *Anderson*, 477 U.S. at 250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

### III.

Harvey's remaining excessive force claim challenges his continued confinement in five-point restraints for approximately 22 hours. I find material disputes of fact exist as to this claim and, therefore, will deny summary judgment.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). To determine whether a prisoner has stated a cognizable excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Whether force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of

force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *see, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010).

The use of five-point restraints in a good faith effort to control an inmate is not *per se* unconstitutional. *See Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996); *Sadler v. Young*, 325 F. Supp. 2d 689, 702 (W.D. Va. 2004), *rev'd on other grounds*, 118 F. App'x 762 (4th Cir. 2005) (unpublished). However, courts have found that continued restraint of this type, without legitimate purpose, can state a constitutional violation. *See Williams*, 77 F.3d at 763; *Sadler*, 325 F. Supp. 2d at 702. "[When] the immediacy of the disturbance [i]s at an end . . . the unnecessary infliction of continued pain throughout a prolonged time period clearly supports an inference that the guards were acting to punish, rather than to quell the disturbance." *Williams*, 77 F.3d at 765 (citing *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990) ("[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective.") (quotations omitted)). As such, continued use of five-point restraints on an inmate who does not currently pose any threat to security or discipline can violate the Eighth Amendment, even when that inmate does not suffer significant physical injuries. *See Sadler*, 325 F. Supp. 2d at 704; *Davis v. Lester*, 156 F. Supp. 2d 588, 594 (W.D. Va. 2001).

Harvey alleges that he was not disruptive, did not provoke or warrant his continued confinement in five-point restraints, and suffered in pain with open wounds during the 22 hours that he was in five-point restraints. Alternatively, the Defendants allege that Harvey was disruptive prior to and during his placement in five-point restraints, and that he was released

8

from the restraints when his behavior improved. Defendants also allege that, during the 22 hours he was restrained, Harvey was offered one meal and four bathroom breaks, some of which Harvey refused. Contrary to Defendants' contentions, the prison's surveillance and hand-held camera video footage does not compel adoption of Defendants' version of the facts and rejection of Harvey's. "[W]hen documentary evidence 'blatantly contradict[s]' a plaintiff's account 'so that no reasonable jury could believe it,' a court should not credit the plaintiff's version on summary judgment." *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *accord Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). The video footage, especially that of the hand-held camera which includes audio, does not "blatantly contradict" Harvey's account of the incident. *Id*. In fact, the video footage is inconclusive in resolving the parties' factual disputes and appears to support Harvey's contention that his behavior was not disruptive or erratic during the 22 hours he was in five-point restraints so as to warrant continued confinement for that amount of time.

Having reviewed the record as a whole and drawing all reasonable inferences in the light most favorable to Harvey, I conclude that Harvey states a viable excessive force claim and that there are genuine issues of material fact precluding summary judgment on this claim. These same disputes of fact preclude Defendants from arguing that they are entitled to qualified immunity.[5] *Newkirk v. Enzor*, 674 F. App'x 276, 280 (4th Cir. 2017) ("[S]ummary judgment on

---

[5] "[Q]ualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015). In deciding whether defendant is entitled to qualified immunity, the court must determine "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id*. at 881. A "court 'may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case.'" *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 8 92, 898 (4th Cir. 2016) (alteration

qualified immunity grounds is improper as long as there remains any factual dispute regarding the actual conduct of the defendant[].") (quoting *Vathekan v. Prince George's Cty.*, 154 F.3d 173, 180 (4th Cir. 1998)). For these reasons, I will deny Defendants' motion for summary judgment as to Harvey's excessive force claim.

## IV.

Harvey alleges that he suffered cruel and unusual living conditions when Defendants refused him bathroom breaks and meals during his confinement in five-point restraints. I find that Harvey fails to state a cognizable cruel and unusual living conditions claim, and therefore Defendants are entitled to qualified immunity and summary judgment on this claim.

In order to establish cruel and unusual living conditions, a prisoner must prove that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (emphasis in original) (internal quotation marks omitted). Only extreme deprivations are sufficient to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See Hudson v. McMilian*, 503 U.S. 1, 8-9 (1992). In order to demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions. *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Strickler*, 989 F.2d at 1381. The subjective component of a challenge to conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834

---

in original) (quoting *Raub*, 785 F.3d at 881). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." *Id.*

(1994). "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. Instead, it requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *See id.* at 837; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Regardless of whether Harvey was, in fact, denied two meals over the 22-hour period, he fails to present a genuine issue of material fact as to any serious or significant injury he suffered as a result of missing the meals. It is well established that mere hunger or physical weakness is not a significant physical injury. *See Henderson v. Va.*, No. 7:06cv408, 2007 U.S. Dist. LEXIS 70207, at *27, 2007 WL 2781722, at *7 (W.D. Va. 2007); *White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993) (prisoner must show physical injury to maintain Eighth Amendment claim based upon inadequate nutrition). Accordingly, Defendants are entitled to summary judgment and qualified immunity as to Harvey's claim about not receiving meals for 22 hours.

In regard to Harvey's lack of access to a toilet while in five-point restraints, the hand-held video footage shows three separate occasions that Defendants offered Harvey a bathroom break. Even if, *arguendo*, Harvey suffered a deprivation of a basic human need by not having access to a toilet while in five-point restraints – as to the stretch of time not captured by video footage – he fails to establish any defendant's deliberate indifference as to that need. Harvey fails to show how any defendant actually knew of or recklessly disregarded his need for a bathroom break; rather, he argues that he was simply not offered such breaks. Accordingly, Harvey has not shown that he suffered cruel and unusual living conditions as a result of his missed bathroom breaks during the 22-hour period in five-point restraints. Moreover, to the extent that Harvey argues that Defendants failed to follow prison policy with respect to both his meals and

bathroom breaks while in five-point restraints, his allegations do not state a claim. *See Riccio v. Cnty of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (recognizing a violation of policy does not automatically equate to a violation of a federal right). As such, Defendants are entitled to summary judgment and qualified immunity for Harvey's claim as to not receiving bathroom breaks while in five-point restraints.

V.

Harvey alleges that before and during the period he was held in five-point restraints, Defendants did not provide him with notice or a chance to be heard regarding the deprivation of his liberty through the use of the five-point restraints. Defendants state that Harvey's own actions made procedural protections impossible before and during the 22-hour restraint period. I find material disputes of fact exist as to Harvey's due process claim and, therefore, will deny summary judgment as to this claim.

The Due Process Clause of the Fourteenth Amendment requires states to provide procedural rules to protect persons against mistaken deprivations of life, liberty, or property. *Carey v. Piphus*, 435 U.S. 247, 259 (1978). State prison policies may create a constitutionally protected liberty interest when they "impos[e] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).

Defendants concede that five-point restraints impose an atypical and significant hardship under *Sandin*, which gives inmates a protected liberty interest in avoiding such restraints. *See Blount v. Collins*, No. 7:12CV476, 2013 U.S. Dist. LEXIS 11452, 2013 WL 408476, at *20 (W.D. Va. 2002) (citing *Faison v. Damron*, No. 7:00CV739, 2002 U.S. Dist. LEXIS 5239, 2002 WL 467145 (W.D. Va. 2002)). However, Defendants argue that procedural protections for

12

Harvey before or during the restraint period were not possible because officers placed Harvey in five-point restraints in response to his ongoing disruptive behavior. *See Williams*, 77 F.3d at 769-70 (recognizing that when prison security emergency precludes predeprivation process, post-deprivation procedural protections are adequate). Defendants also assert that no hearing was possible during the restraint period because the period ended as soon as officers determined that Harvey's behavior was sufficiently compliant for him to be released. Having reviewed the record as a whole and drawing all reasonable inferences in the light most favorable to Harvey, I conclude that Harvey states a cognizable due process claim and that there are genuine issues of material fact precluding summary judgment on this claim. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("[W]here the State feasibly can provide a predeprivation hearing before [a deprivation of a liberty interest], it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the [deprivation]."). Moreover, these same disputes of fact preclude Defendants from invoking the protection of qualified immunity. *Newkirk*, 674 F. App'x at 280.

## VI.

Harvey alleges that the actions of Addington, Woliver, and Gibson – using excessive force against him, without need or provocation, causing him to be "severely physically injured" – constitute common law assault and battery. To prove assault under Virginia law, Harvey must show that Defendants "engage[d] in an overt act intended to inflict bodily harm and [had] the present ability to inflict such harm or engage[d] in an overt act intended to place the victim in fear or apprehension of bodily harm and create[d] such reasonable fear or apprehension in the victim." *Carter v. Commonwealth*, 606 S.E.2d 839, 841 (Va. 2005). To prove battery under Virginia law, Harvey must show that there was an unwanted touching that was not consented to,

excused, or justified. *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). Here, the same facts that preclude summary judgment on Harvey's federal excessive force claim are sufficient to state an actionable state law claim for assault and battery. Defendants contend that the record shows no assault or battery occurred, and thus, there remains a genuine dispute of material facts as to this claim.

Harvey additionally claims common law willful and wanton negligence[6] against Defendants Franklin, Collins, and Miller. To the extent that Defendants fail to address this claim in their motion for summary judgment, Defendants are likewise not entitled to summary judgment as to this claim.

## VII.

For the reasons stated herein, Defendants' motion for summary judgment is denied in part and granted in part. The matter will be set for trial.

An appropriate order will be entered this day.

ENTERED this  16th  day of March, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Virginia law recognizes "three degrees of negligence, (1) ordinary or simple, (2) gross, and (3) willful, wanton, and reckless." *Griffin v. Shively*, 315 S.E.2d 210 (Va. 1984). "Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id*. at 321-22.

14